(66 Misc. Rep. 523.)

### In re NAMMACK.

(Supreme Court, Special Term, New York County. March, 1910.)

1. CORONERS (§ 4*)—CORONER'S PHYSICIAN—TERM OF OFFICE.

    Under Greater New York Charter (Laws 1897, c. 378) § 1571, continuing in force Laws 1882, c. 410, § 1769, providing that each coroner of the city shall appoint a coroner's physician, the position of coroner's physician is not coterminous with that of the coroner appointing him.

    [Ed. Note.—For other cases, see Coroners, Dec. Dig. § 4.*]

2. CORONERS (§ 4*)—CORONER'S PHYSICIAN—REMOVAL.

    Greater New York Charter, § 1571, provides that each coroner shall, on assuming office, appoint a coroner's physician. April, 1908, the position of the coroner's physician was placed under the civil service law under the competitive class. *Held*, that such physician is removable only under conditions specified in the civil service law.

    [Ed. Note.—For other cases, see Coroners, Dec. Dig. § 4.*]

Application by William H. Nammack for writ of mandamus to Frank L. Polk and others composing the Municipal Civil Service Commission of the City of New York. Writ granted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John J. Curtin, for petitioner.

Archibald R. Watson (Elliot S. Benedict, of counsel), for respondents.

Alfred J. Talley, not appearing but submitting brief in behalf of Drs. Frey and Shoennenberg by permission of court.

GERARD, J. By section 1570 of the Greater New York charter (Laws 1897, c. 378) it was provided that three coroners should be elected in the borough of Queens. At the general election held in 1897 these three coroners were elected. Section 1769, c. 410, of the Laws of 1882, relating to the then city of New York (Consolidation Act), was continued in force by section 1571 of the Greater New York charter and provided as follows:

"Each coroner of said city shall, on assuming office, appoint a qualified physician, who shall be a resident in said city and shall be known as a 'coroner's physician.' Any vacancy in the office of coroner's physician shall be filled by the board of coroners. The board of coroners, for cause, may remove physicians appointed by them."

On about January 1, 1898, pursuant to the above laws Dr. Nammack was duly appointed a coroner's physician by Coroner Philip T. Cronin. Drs. Flynn and Strong were appointed by the other two coroners. In April, 1908, the position of coroner's physician was placed under the civil service law in the competitive class by the municipal civil service commission, and has since remained in that class. The first question to determine is: What is the tenure of office of a coroner's physician under the above laws and under the above orders of the municipal civil service board?

Mr. Justice Garretson, in determining this question as to the status of coroner's physician in the borough of Queens, has held that the position of coroner's physician is coterminous with that of the coroner appointing him. I cannot agree with this conclusion, although Mr. Justice Greenbaum has made a similar statement in People ex rel. Whitman v. Goldenkranz, 38 Misc. Rep. 682, 78 N. Y. Supp. 267. People ex rel. Schulum v. Harburger, 132 App. Div. 260, 116 N. Y. Supp. 994, is not in point, because in that case the appointment of a private clerk to the coroner is authorized by section 12 of the civil service law (Laws 1899, c. 370), which entitled elective judicial officers to appoint one clerk, who shall be in the exempt class; and the Appellate Division, of course, decided that such an appointment was personal to the officer making the appointment and died when he ceased to hold office. This is not the case here, for the position of coroner's physician is not in the exempt class, and no point has been made as to the authority or want of authority of the municipal civil service board to place this position in the competitive class.

By section 166 of the judiciary law, originally Laws 1895, c. 553, § 5, as amended (Consol. Laws, c. 30), it is provided that:

"Each of the justices of the Supreme Court of the First judicial district shall appoint and at pleasure remove four attendants upon the court. Each of said attendants may also be removed by the Appellate Division, but not until he has been informed of the cause of the proposed removal and has been allowed an opportunity to make an explanation."

The state civil service board placed three of these positions in the competitive class, allowing one as an exempt position, and it has universally been recognized by the judgments of this department, that, in spite of the words "at pleasure remove" (much stronger than the case at bar), when the appointments in the competitive class were once made, even after the judge who made the appointment ceased to hold office, the appointees continued in office and were charged against his successor, who could only make one exempt or confidential appointment (and must fill any vacancies from the civil service list, and could not remove any appointee of his predecessor in office except the one in the exempt class). Where a statute prescribes no definite term of office, the person appointed for that office is not subject to removal at any time at the pleasure of his superior. Such a statute must be construed in connection with the civil service law, which also applies, and prohibits the removal of the office holder except under the conditions specified in the law, if the office comes under the civil service law. People ex rel. Hoefle v. Cahill, 188 N. Y. 489, 81 N. E. 453.

In 1901 by Laws 1901, c. 466, the number of coroners in Queens borough was reduced to two after December 31, 1901. Nevertheless all three above-named doctors continued acting as coroner's physicians for the borough of Queens and drew the salary of the position up to January 1, 1907, when Dr. Strong resigned. This resignation of Dr. Strong disposed of the difficulty that in some way one of the coroner's physicians in Queens borough must vacate the office. There were legally two coroners and two lawfully appointed coroner's physicians —Drs. Nammack and Flynn—neither of whom, in my opinion, could be deprived of their office without a compliance with the civil service law and the provision of law relative to veteran volunteer firemen, and whose terms, in my opinion, were not coterminous with the term of the coroner appointing them. The relator is a veteran volunteer fireman, and has never, if my view of the law is correct, been legally removed from office.

Settle order in accordance with above opinion.

Ordered accordingly.