section of the Code of Civil Procedure before referred to so provides. It is:

"In any proceeding for the probate of a will in which any controverted question of fact arises, the surrogate must make an order directing the trial by jury of such controverted question of fact, if any party appearing in such proceeding seasonably demands the same."

The demand was properly made, and thereafter the only discretion left in the surrogate was whether he would direct a trial of the issues before a jury in the Surrogate's Court or in the Supreme Court. This discretion he exercised by directing the trial in the former court, and having so exercised it, and the case having been set down for trial in that court, I think it would have been an improper exercise of discretion on the part of the other surrogate, the facts being the same, to have in effect reversed that order by directing a trial in the Supreme Court; in other words, I think when one surrogate, after hearing all of the interested parties, has exercised the discretion given to him by statute to order a probate proceeding tried by jury in the Surrogate's Court, and no appeal has been taken from the order, and the same has become final and conclusive, the other surrogate ought not, unless different facts are presented, to interfere by directing a trial in another forum. The orderly method of procedure, as well as the proper administration of justice, require, as it seems to me, that course should be taken, notwithstanding the fact that the other surrogate has the power to make such transfer.

I am therefore of the opinion that the motion to transfer to the Supreme Court was properly denied, and that the order appealed from should be affirmed, with $10 costs and disbursements. Order filed. All concur.

---

NEW YORK RYS. CO. v. PRENDERGAST, City Comptroller et al.

(Supreme Court, Appellate Division, First Department. April 7, 1916.)

1. TAXATION ⬉➡376(1)—"SPECIAL FRANCHISE"—RAILROAD'S RIGHT IN STREET.
    Right of a railroad, given it by contract with a city, to run its cars over the city's bridge on tracks owned by the city, is not a "special franchise," relative to any right of the railroad, under Tax Law (Consol. Laws, c. 60) § 48, to have deducted from the tax of the city on such right of use, the amount paid by it to the city under the contract for such right; a right of a railroad in a street, which, under section 2, subd. 3, would constitute a special franchise, being one which it exercises in connection with its ownership of tangible property therein, such as tracks laid thereon.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. ⬉➡376(1).

    For other definitions, see Words and Phrases, First and Second Series, Special Franchise.]

2. TAXATION ⬉➡376(1)—SPECIAL FRANCHISE—ESTOPPEL.
    If contract right of a railroad to operate cars over a city's bridge on the city's tracks, though in fact not a special franchise, was assessed as such, the city would be estopped from denying it was such a franchise, as

---

⬉➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

regards right of the railroad, under Tax Law, § 48, to a credit on the tax of the amounts paid under the contract.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. ☜376(1).]

3. MANDAMUS ☜154(9)—MOVING PAPERS—PROOF OF RIGHT—INFORMATION AND BELIEF.

The moving papers for a writ of mandamus do not make proof of right authorizing granting of the writ; the facts set forth being on information and belief, and the sources of information and grounds of belief not being given.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 310, 311; Dec. Dig. ☜154(9).]

4. TAXATION ☜376(1)—ASSESSMENT OF FRANCHISE—PRESUMPTION.

That a right was in prior years assessed as a special franchise is no proof that it was so assessed in the years in question.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. ☜376(1).]

5. TAXATION ☜376(1)—SPECIAL FRANCHISE—ESTOPPEL.

A city, by crediting what it receives from certain railroads, for the right of running their cars over its bridge, on their special franchise taxes, is not estopped from denying such right of credit to another railroad for its payments.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. ☜376(1).]

Appeal from Special Term, New York County.

Application of the New York Railways Company for mandamus to William A. Prendergast, Comptroller of the City of New York, and others. From an adverse order, applicant appeals. Affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, DOWLING, SMITH, and DAVIS, JJ.

Ralph Norton, of New York City, for appellant.
Addison B. Scoville, of New York City, for respondents.

McLAUGHLIN, J. This appeal is from an order denying an application for a writ of mandamus to compel the respondents to credit against the special franchise taxes of the appellant for the years 1912, 1913, and 1914 certain bridge tolls paid by it to the city of New York under a contract for the operation of cars over the Williamsburgh Bridge.

On the 21st of May, 1904, the city of New York entered into a contract with the New York City Railway Company, by which the latter acquired the right to operate its cars over the Williamsburgh Bridge for a term of years upon tracks constructed and owned by the city, paying therefor five cents per round trip for each car operated. The appellant has succeeded to the rights of such railway company. By the same contract a similar right was given to other corporations. The amounts sought to be credited are $10,292.25 paid up to March 31, 1912, $22,205.45 paid up to March 31, 1913, and $20,535.75 paid up to March 31, 1914. The right to have these amounts credited is claimed under and by virtue of section 48 of the Tax Law. This section provides, in substance:

"If, when the tax assessed on any special franchise is due and payable under the provisions of law applicable to the city, town or village in which the tangible property is located, it shall appear that the * * * corporation affected has paid to such city * * * for its exclusive use within the next preceding year, under any agreement therefor, * * * any sum based upon a percentage of gross earnings, or any other income, or any license fee, or any sum of money on account of such special franchise, granted to or possessed by such * * * corporation, which payment was in the nature of a tax, all amounts so paid for the exclusive use of such city * * * shall be deducted from any tax based on the assessment made by the state board of tax commissioners for city * * * purposes, but not otherwise. * * *"

In order to have the amounts thus claimed credited under this statute, it must be made to appear that the right of the appellant to operate its cars over the Williamsburgh Bridge is a special franchise; that the payments made to the city on account of such operation are in the nature of a tax and that there has been a special franchise tax assessed against the appellant on account of such right.

[1] It has been determined by this court that the right acquired by the appellant under the contract referred to did not give to it a franchise to operate its cars. Schinzel v. Best, 45 Misc. Rep. 455, 92 N. Y. Supp. 754, affirmed on opinion below 109 App. Div. 917, 96 N. Y. Supp. 1145; People ex rel. Bridge Operating Co. v. Public Service Commission, 153 App. Div. 129, 138 N. Y. Supp. 434. The appellant, however, contends that the determination thus made only goes to the extent of holding that the right to run cars over the bridge is not a formal franchise as the same is defined in sections 73 and 74 of the Greater New York Charter (Laws 1901, c. 466), but that it does constitute a special franchise as defined and made taxable by the Tax Law; that there is a difference between the two terms, the latter being much broader than the former; that the right thus given is a special franchise within the definition of subdivision 3 of section 2 of the Tax Law and taxable as such. In support of this contention our attention is called to People ex rel. Metropolitan St. Ry. Co. v. Tax Commissioners, 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674, People ex rel. Retsof Mining Co. v. Priest, 75 App. Div. 131, 77 N. Y. Supp. 382, affirmed 175 N. Y. 511, 67 N. E. 1088, People ex rel. East River T. R. R. v. Tax Commissioners, 160 App. Div. 771, 146 N. Y. Supp. 112, and People ex rel. United Natural Gas Co. v. Priest, 152 App. Div. 249, 136 N. Y. Supp. 575.

These authorities do not, I think, sustain the contention. In each of them the rights held to be special franchises and taxable as such were exercised only in connection with the ownership of tangible property, such as tracks upon or pipes laid under the street. In the present case the only right which the appellant has is one not in connection with its tangible property, but given solely by a contract to operate cars on the Williamsburgh Bridge on tracks owned by the city. Such right, it seems to me, does not come within the definition as found in the subdivision of the section of the Tax Law referred to. The opinion in People ex rel. Interborough Rapid Transit Co., 126 App. Div. 610, 110 N. Y. Supp. 577, affirmed 195 N. Y. 618, 89 N. E. 1109, as I read it, supports this view, as well as the language used in section 48 of the Tax Law.

[2, 3] It is further·claimed on the part of the appellant that the moving papers show clearly and conclusively that the right to operate cars over the bridge was assessed as a special franchise during the years named. If this be so, then under the authority of People ex rel. Nassau Electric R. R. v. Grout, 119 App. Div. 130, 103 N. Y. Supp. 975, affirmed 189 N. Y. 510, 81 N. E. 1173, the respondents are estopped from denying that the right is in fact a special franchise, and are obligated to make the credits demanded. The answer to this claim is that such fact does not appear from the papers used upon the motion. The proof presented bearing upon that question is not of such a character as entitled the appellant to the relief demanded. The facts set forth are on information and belief, and the sources of the information and the grounds of the belief are not given. That such proof was insufficient to authorize the granting of a motion for a mandamus was held in People ex rel. Bourke v. Grout, 107 App. Div. 228, 94 N. Y. Supp. 1101, and People ex rel. Keating v. Prendergast, 151· App. Div. 541, 136 N. Y. Supp. 184.

[4, 5] But it is urged that these authorities ought not to be held controlling, since the allegations referred to show in the only manner possible that the right has been so assessed. In this connection attention is called to the fact that the moving papers contain positive allegations that such right was so assessed, as established in certain litigated cases involving the assessments for 1910 and 1911; that in 1912, 1913, and 1914 the city voluntarily credited tolls paid by other corporations for operating cars over the bridge under the same contract against their special franchise taxes. But, obviously, what may have been determined as to the assessments in 1910 and 1911 is no proof whatever as to what was included by the state board of tax commissioners in its assessments for 1912, 1913, and 1914. Nor does the fact that the city has credited what it has received from other corporations for the right to operate cars over the bridge against their special franchise taxes estop the city from denying the right of the appellant to have what it paid credited towards its special franchise taxes. Under the contract the appellant agreed to pay to the city a certain sum for the right to run cars over the bridge. It ought not to be relieved of that obligation, unless it has paid an equivalent sum by way of taxes for such right, and that fact does not appear from the moving papers, for which reason the writ was properly denied.

The order appealed from, therefore, is affirmed, with $10 costs and disbursements. All concur.